"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE L. DAUS, | ) Case No. CV 05-129 AN |
| Plaintiff, | ) MEMORANDUM AND ORDER |
| v. | ) |
| JO ANNE B. BARNHART, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) ) ) |
| Defendant. | ) |

## I. **INTRODUCTION**

Pursuant to 42 U.S.C. § 405(g), Plaintiff is seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). Both parties have consented to proceed before the Magistrate Judge. Pursuant to the Court's Case Management Order, the parties have filed a joint stipulation and request for an order summarily deciding issues concerning remand and/or immediate payment of benefits ("JS").

/ / /

/ / /

## II. BACKGROUND

Plaintiff was born on April 19, 1945, and was 58 years old at the time of the administrative hearing. [Administrative Record ("AR") at 50, 104.] She completed high school and has past relevant work experience as a collection clerk and general office worker. [AR at 50.]

Plaintiff filed an application for DIB on August 28, 2002, and an application for SSI on June 26, 2003. [AR at 49, 104-06.] Plaintiff claims that she has been disabled since October 12, 2001, due to depression, panic attacks, heart palpitations, migraine headaches, and hyperthyroidism. [AR at 50.] Her applications were denied at the administrative level. [AR at 49, 92-96.] At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on August 1, 2003. [AR at 66-90.] On January 24, 2004, the ALJ issued a decision denying Plaintiff's applications for benefits. [AR at 49-60.] When the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner. [AR at 4-6.] Plaintiff then commenced this action for judicial review.

## III. DISCUSSION

### A. Standard of Review

This Court must review the record as a whole and consider adverse as well as supporting evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Commissioner's final decision affirming an ALJ's decision that a claimant is not disabled must be upheld if the ALJ's findings are supported by substantial evidence in the record and the proper legal standards were applied. *See Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1990). The harmless-error rule applies. *Id.* at 1131. "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). It is further defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see*

*also Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed. 2d 842 (1971). The ALJ is responsible for determining credibility, resolving conflicting testimony, resolving ambiguities, and "is entitled to draw inferences 'logically flowing from the evidence.'" *Andrews*, 53 F.3d at 1039; *Macri v. Chater*, 93 F.3d 540, 543-544 (9th Cir. 1996). Consequently, inferences and conclusions as the ALJ may reasonably draw from the evidence are upheld. *See Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). Likewise, an ALJ's findings are upheld where the evidence is susceptible of more than one rational interpretation. *Andrews*, 53 F.3d at 1039-1040.

To collect DIB or SSI benefits, Plaintiff must suffer from a "disability." 42 U.S.C. §§ 423(a)(1)(D); 1382(a). To be disabled within the meaning of the Act, a claimant must suffer from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A); 1382c(a)(3)(A). The impairment must be of "such severity that [the claimant] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B). The claimant has the burden of showing that she or he is disabled. 42 U.S.C. §§ 423(d)(5); 1382c(a)(3)(H)(i) ; *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990).

**B.     The Five-Step Sequential Analysis**

The Social Security Regulations use a five-step sequential analysis for making DIB and SSI disability determinations. 20 C.F.R. §§ 404.1520, 416.920. The first step asks whether the claimant is working. The second step asks whether the claimant has a "severe" impairment, which is defined as an impairment which "significantly" -- more than minimally -- limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1521, 416.921; *Bowen v. Yuckert*, 482 U.S. 137, 154, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). However, this step two determination is "'a *de minimis* screening device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th

Cir. 2001) (internal citations omitted). The third step asks whether the claimant has an impairment which meets or equals the criteria of any impairment identified in the appendix to the Social Security Regulations commonly referred to as the "Listings." *Id*.

The fourth and fifth steps require that the ALJ assess the claimant's residual functional capacity ("RFC"). RFC is a determination of a claimant's remaining abilities to perform work. 20 C.F.R. §§ 404.1545, 416.945(a). In determining a claimant's physical limitations, the ALJ considers the claimant's ability to lift weight, sit-stand, push-pull, etc. 20 C.F.R. §§ 404.1545(b), 416.945(b). Mental, environmental and other limitations such as the ability to see and hear are also part of the RFC determination. 20 C.F.R. §§ 404.1545(c) and (d), 416.945(c) and (d). A claimant's limitations are categorized as either exertional or non-exertional; exertional limitations are those based upon strength considerations alone. *Cooper v. Sullivan*, 880 F.2d 1152, 1156 (9th Cir. 1989). Non-exertional limitations are unrelated to strength and include "mental, sensory, postural, manipulative, and environmental limitations." *Id*. The exertional requirements of work are classified as sedentary, light, medium, heavy and very heavy. 20 C.F.R. §§ 404.1567, 416.967.

Once the RFC is determined, the fourth step asks whether the claimant can perform his or her past relevant work; at this step the claimant also has the burden of proving he or she is unable to perform past relevant work.

At the fifth step in the analysis, the burden shifts to the Commissioner to prove that the claimant, based on his or her age, education, work experience, and residual functional capacity, can perform other substantial and gainful work existing in the regional or national economy. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner can satisfy this fifth step burden by either (1) applying the Medical-Vocational Guidelines (the "Grids") found at 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00-204.00, or (2) taking the testimony of a Vocational Expert ("VE"). *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). However, the Commissioner cannot rely upon the Grids and must use a VE where the claimant's non-exertional limitations are 'sufficiently severe' so as to

significantly limit the claimant's ability to perform the full range of sedentary, light, or medium work. *Id.*

If the answer to any of the questions in the five-step analysis establishes the claimant is or is not disabled, the evaluation ends. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Bowen v. Yuckert*, 482 U.S. at 140.

In the decision denying benefits, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. [AR at 50.] While the ALJ found that Plaintiff suffers from the severe impairments of major depressive disorder and generalized anxiety disorder, he determined that Plaintiff's impairments did not meet or equal one of the impairments in the Listings. [AR at 16.] The ALJ assessed Plaintiff with an RFC to perform work at all exertional levels, but found that Plaintiff should not work with the public or perform work that involves group effort at problem solving, and that her job should be relatively low stress, task-oriented, and involve no more than minimal contact with co-workers incidental to performing a task-oriented job. [AR at 59.] Based on this RFC, the ALJ concluded that Plaintiff was not capable of performing her past relevant work. [AR at 59.] However, the ALJ determined that Plaintiff would be able to perform other work that exists in significant numbers in the economy, including work as an industrial cleaner, hand packager, and sorter. [AR at 60.]

**C. Analysis of Disputed Issues**

Plaintiff asserts that the ALJ erred by: (1) rejecting the opinion of her treating psychiatrist, Nady Hannah, M.D., and (2) failing to give proper consideration to the Global Assessment of Functioning ("GAF")[1] score assessed by her examining psychologist, Robert Johansen, Ph.D. The Commissioner disagrees.

---

[1] The GAF scale is a "hypothetical continuum of mental health-illness" used to determine "psychological, social, and occupational functioning." Diagnostic and Statistical Manual of Mental Disorders (4th ed.) ("DSM-IV") at 32. The GAF scale goes from 0-90. The relevant scores for this case are 51-60--moderate symptoms or moderate difficulty with social and occupational functioning and 41-50--serious symptoms or serious impairment with social and occupational functioning.

### 1.     Dr. Hannah

Dr. Hannah began treating Plaintiff on April 28, 2003. [AR at 347.] On June 16, 2003, Dr. Hannah completed a Psychiatric/Psychological Impairment on Plaintiff's behalf. [AR at 347-54.] He diagnosed Plaintiff with major depression with psychotic features, recurrent, moderate, and assessed a GAF score of 55. [AR at 347.] Dr. Hannah found that Plaintiff was "markedly limited" in 13 out of 20 categories of mental activities. [AR at 350-52.] Dr. Hannah also opined that Plaintiff would be absent from work more than three times a month. [AR at 354.] Dr. Hannah concluded that Plaintiff was incapable of even low stress work, because she was easily distracted and had poor memory and concentration. [AR at 353.] Plaintiff's argument that the ALJ improperly rejected Dr. Hannah's opinion without providing adequate reasons for doing so is without merit. [JS at 14-18.]

An ALJ may disregard a treating physician's opinion whether or not that opinion is contradicted. *Andrews*, 53 F.3d at 1041 (ALJ may credit opinion of nontreating source based on independent clinical findings over treating physician's opinion)(citing *Magallanes*, 881 F.2d at 751). If the treating physician's opinion is contradicted, and the opinion of a non-treating source is based upon independent clinical findings that differ from those of the treating physician, the opinion of the non-treating source may itself be substantial evidence on which the ALJ may rely. *Andrews*, 53 F.3d at 1041. Where, on the other hand, a non-treating source's opinion contradicts that of the treating physician, but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence. *Id.*; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

In the decision, the ALJ reviewed Dr. Hannah's opinion before rejecting it. [AR at 52, 56.] In doing so, the ALJ relied on the findings of examining psychiatrist Sohini Parikh, M.D. and examining psychologist Robert Johansen, Ph.D. [AR at 52-53, 55-57,

220-25, 370-76.] Dr. Parikh conducted a complete psychiatric evaluation of Plaintiff in November 2002. [AR at 220-25.] Dr. Parikh diagnosed Plaintiff with dysthymia, major depression, and an anxiety disorder, NOS, and assessed a GAF score of 55 to 60. [AR at 224.] Dr. Parikh opined that Plaintiff's functional assessment would be normal if she takes her medication. [AR at 225.] Specifically, Dr. Parikh reported that Plaintiff did not have any impairment in the ability to reason or make social, occupation, and personal adjustments. [AR at 225.] Dr. Parikh also reported that Plaintiff was able to understand, carry out, and remember simple instructions, follow complex instructions, interact appropriately with co-workers, and respond appropriately to the usual work settings in such matters as attendance and would not have a hard time adjusting to changes in the work routine. [AR at 225.] Dr. Johansen conducted a complete psychological evaluation of Plaintiff in October 2003. [AR at 370-76.] His findings are similar to those of Dr. Parikh. Dr. Johansen diagnosed Plaintiff with dysthymic disorder and generalized anxiety disorder and assessed a GAF score of 50. [AR at 375.] Although Plaintiff presented in a slow and somewhat suspicious manner when interacting with others, Dr. Johansen found that Plaintiff's judgment and insight were adequate. [AR at 376.] Dr. Johansen also noted that Plaintiff's test results suggested that she should be able to respond adequately in a work setting and follow simple instructions. [AR at 376.] The ALJ was allowed to credit the findings of Drs. Parikh and Johansen over Dr. Hannah's opinion because the opinions of Drs. Parikh and Johansen were based upon independent clinical findings. *See Andrews*, 53 F.3d at 1041.

The ALJ also provided specific, legitimate reasons to support rejection of Dr. Hannah's opinion. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). For example, the ALJ noted that the extreme limitations assessed by Dr. Hannah were conclusory and inconsistent with the minimal findings on examination. [AR at 56]; *see Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (explaining that the ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). Indeed, on June 5, 2003, Dr. Hannah reported that Plaintiff's sleep

was very good with medication, her appetite was fair, her memory was improved, her mood and affect were euthymic. [AR at 366.] Dr. Hannah also noted that Plaintiff reported that she was "doing well." [AR at 366.] Further, the ALJ found that Dr. Hannah's opinion appeared to be based on Plaintiff's subjective complaints, which the ALJ properly discounted. [AR at 54-56]; *Morgan*, 169 F.3d at 602 (explaining that "[a] physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted"); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Thus, the ALJ provided sufficient reasons for rejecting Dr. Hannah's opinion.

**2. GAF Score**

Plaintiff contends that the ALJ erred by rejecting the GAF score assessed by Dr. Johansen. [JS at 21-24.] In the decision, the ALJ noted that Dr. Johansen rated Plaintiff with a GAF score of 50, which indicated "serious" limitations. [AR at 57.] The ALJ, however, rejected Dr. Johansen's GAF score because it was inconsistent with the findings in his report and other medical evidence. [AR at 57.] Plaintiff disagrees with the ALJ's conclusion. In particular, Plaintiff refers to "positive findings on Dr. Johansen's mental status exam" (including reports of numbness and tingling in Plaintiff's legs, motor weakness, dizziness, and difficulty breathing during the evaluation, preoccupation, slow responses to questioning, slowed and mildly disorganized thinking, and moderately impaired concentration), and the results of Plaintiff's MMPI-2 test (suggesting restlessness, dissatisfaction, instability, problems for suicide risk, high potential for impulsive or anti-social behavior, a propensity for hostility, and urges to destroy things). [JS at 22-23; AR at 373-75.] Dr. Parikh, however, assessed Plaintiff with a GAF score of 55 to 60, suggesting only moderate symptoms or moderate difficulty with social and occupational functioning.[2] [AR at 57, 224]; DSM-IV at 32. Because the ALJ was entitled to resolve the conflict between medical opinions of equal weight, he did not need

---

[2] Plaintiff contends that the ALJ improperly ignored Dr. Parikh's GAF assessment. [JS at 24.] This contention is belied by the record. [AR at 52.]

Case 2:05-cv-00129-AN   Document 15   Filed 04/24/06   Page 9 of 9   Page ID #:54

1  to provide specific and legitimate reasons for rejecting Dr. Johansen's GAF assessment.
2  *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)("Where the evidence is
3  susceptible to more than one rational interpretation, one of which supports the ALJ's
4  decision, the ALJ's conclusion must be upheld."); *Andrews*, 53 F.3d at 1041; (requiring
5  specific and legitimate reasons only when the conflicting opinion of a non-treating
6  physician is not based on independent clinical findings); *Morgan*, 169 F.3d at 600 (same).

## IV. CONCLUSION

Accordingly, the Court finds the ALJ's determination of non-disability is free of legal error and supported by substantial evidence in the record. Therefore, Plaintiff's request for an order directing the payment of benefits or remanding this case for further proceedings is DENIED, and the Commissioner's request for an order affirming the Commissioner's final decision and dismissing the action is GRANTED. The clerk shall enter judgment, close the file and terminate all pending motions.

DATED: April 24, 2006          /s/ Arthur Nakazato
                               ARTHUR NAKAZATO
                               UNITED STATES MAGISTRATE JUDGE